FERDINAND, APPELLEE, *v.* HAMILTON LOCAL BOARD OF EDUCATION, APPELLANT.

(No. 83AP-732—Decided May 3, 1984.)

*Edward V. Miller Co., L.P.A., Edward V. Miller* and *James A. Saad,* for appellee.

*Alan P. Varhus,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert T. Baker* and *Matthew DeTemple,* for *amicus curiae* Ohio School Boards Association.

WHITESIDE, J. Respondent-appellant, Hamilton Local Board of Education, appeals from a judgment of the Franklin County Court of Common Pleas granting relator-appellee, Bertie L. Ferdinand, a writ of mandamus ordering Hamilton Local Board of Education to reinstate her to her position as "school lunch supervisor" (also known as cafeteria manager and/or dietician) with the Hamilton Local Board of Education. In support of its appeal, Hamilton Local Board of Education raises three assignments of error, as follows:

"I. The trial court erred in ruling that § 3319.081 of the Ohio Revised Code and the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires [*sic*] the involvement of employees in the legisla-

tive decision-making process of a school district board of education through a due process hearing conducted prior to the elimination or abolishment of a position of employment.

"II. The trial court erred in sustaining appellee's motion for summary judgment on the basis that there are no issues of material fact.

"III. The trial court erred in overruling appellant's motion for separate findings of fact and conclusions of law."

This action was originally brought by Ferdinand both as an action in mandamus and as an appeal pursuant to R.C. Chapter 2506 from the action of the Hamilton Local Board of Education in both abolishing the position of Ferdinand and in terminating her continuing contract as a noncertificated employee with the Hamilton Local Board of Education.

Eventually, Ferdinand filed a motion for summary judgment supported by affidavits and attached exhibits. Hamilton Local Board of Education responded with an affidavit and attached exhibits. Accordingly, pursuant to Civ. R. 56(C), the evidence set forth in the affidavits must be construed most strongly in favor of Hamilton Local Board of Education in determining whether Ferdinand is entitled to the relief granted by the trial court.

The trial court referred the motion for summary judgment to a referee who rendered a report which stated in pertinent part:

"* * * Relator/Appellant Bertie Ferdinand was removed from her position as Lunch Room Supervisor with the Hamilton Local Board of Education by board vote without a prior hearing for the stated reasons of economy and efficiency. The position of Lunch Room Supervisor was abolished and her duties assumed by subordinate employees at each school. Ms. Ferdinand had a continuing contract of employment under Revised Code Section 3319.081. There has

been no assertion that Ms. Ferdinand was removed for any of the specified types of misconduct mentioned in Revised Code Section 3319.081(C)."

The referee concluded with a statement that: "The Referee concludes that Respondent Board was under a clear legal duty, under the United States Constitution, to afford Relator Ferdinand a due-process hearing prior to taking action on her continuing employment." Objections were made to the referee's report, and the trial court by written opinion approved and adopted the referee's report without further elucidation as to reasons, or of the factual background.

Ferdinand was originally employed under a limited one-year contract as a "Lunch Room Supervisor." Subsequent contracts were entered into, except that in 1975 the limited contract was for two years and referred to "school lunch supervisor." This continued until 1981 when Ferdinand was granted a continuing contract, which states in pertinent part:

"Said employee hereby agrees to be employed in the public schools of said District, subject to the assignment of the Superintendent of Schools and the Board of Education for an indefinite period until he/she resigns, elects to retire, is retired according to law, or until this contract is terminated or suspended pursuant to Section 3319.081 of the Revised Code of Ohio. * * *"

This contract neither specified a specific position nor made provision for termination by the Hamilton Local Board of Education, except pursuant to R.C. 3319.081. It is this continuing contract which is the subject of this action.

The first action of the board of education pertinent to the alleged job abolishment was taken at a special January 1982 meeting, the minutes for which indicate the following:

"Motion by Peters, seconded by Moore, to remove the lunchroom super-

visor's salary schedule * * * from the non-certificated negotiated agreement, and for the salaries for these two positions to be not less than that listed on the salary notice to the individuals * * * and to place these positions in the personnel Section 300 of the Board policy book * * *."

Whether this action was valid or invalid depends upon the terms of the noncertificated negotiated agreement since unilateral action by the board would not be appropriate. Affidavits have been submitted by Ferdinand indicating that this was not negotiated and that, under the understanding of the negotiations and longstanding practice, a noncertificated position remained in the negotiated agreement unless specifically negotiated out. The board of education has submitted no evidence contradicting these affidavits. The January 19, 1982 action of the board of education, whether valid or invalid, can have no bearing upon Ferdinand's right to continued employment under her continuing contract, the action at most pertaining to her salary, not continued employment.

The minutes for a regular April 13, 1982 meeting of the board of education indicate the following:

"Motion by Moore, seconded by Peters, to eliminate the position of the school lunch supervisor (also known as cafeteria manager and/or dietician) including the present contract of Ms. Bertie L. Ferdinand at the end of the current 1981-82 contract year (8/10/82)."

This is the entire action taken by the board, there being no findings as to necessity or basis for the action being set forth in the minutes.

The affidavit of Douglas Reeves, the Superintendent of Hamilton Local School District, indicates that Ferdinand is not a member of the "collective bargaining unit for non-certificated personnel," and refers to the actions of the board on January 19, and April 13, 1982.

Additionally, Reeves states the following in his affidavit:

"11. Duties previously performed by Bertie L. Ferdinand are now performed by existing school personnel.

"12. The Board of Education has not employed a replacement for Bertie L. Ferdinand.

"13. The Board of Education acted in good faith in abolishing the position of school lunch supervisor in an effort to effectuate economies within the school system.

"14. The School District has suffered a substantial decline in student population and reduction in budget prior to its action in abolishing the position of school lunch supervisor."

However, as we have noted, there is no finding by the board of need for economy or that the action was taken for purposes of economy, nor is there any evidence as to economy other than the assertion of Reeves in his affidavit that this was the purpose. Reeves does not controvert the statements in the affidavit of Ferdinand that the work that she performed "must be done by someone in order to obtain the food and handle the operations of the cafeterias of four different schools in the district." Nor does he controvert her statement that the lunchroom program under her supervision "had accomplished a profit of $12,070.71 between September 1981 and March 1982," and "had accomplished a profit of $24,930.33 for the period of September, 1981 through June 1982," which profit was computed after deducting Ferdinand's salary. Nor did Reeves controvert the portion of Ferdinand's affidavit stating that "* * * [t]he school lunch program does not depend upon funds from the general fund, but is self-supporting." Nor did Reeves controvert Ferdinand's statement in her affidavit that she received no notice or hearing concerning the board's action, although he does say that she was told of it after the fact.

R.C. 3319.081 governs contracts with nonteaching employees in a district not covered by civil service, such as the Hamilton Local School District, and provides, in part, as follows:

"* * * [I]n all school districts wherein the provisions of Chapter 124 of the Revised Code do not apply, the following employment contract system shall control for employees whose contracts of employment are not otherwise provided by law:

"(A) Newly hired regular nonteaching school employees, * * * shall enter into written contracts for their employment which shall be for a period of not more than one year. If such employees are rehired, their subsequent contract shall be for a period of two years.

"(B) After the termination of the two-year contract provided in division (A) of this section, if the contract of a nonteaching employee is renewed, the employee shall be continued in employment, and the salary provided in the contract may be increased but not reduced unless such reduction is a part of a uniform plan affecting the nonteaching employees of the entire district."

It was under this scheme that the Hamilton Local Board of Education entered into a continuing nonteaching contract with Ferdinand, which did not specify employment in a specific position but, rather, specified employment in such assignments as might be appropriate with the salary to be as set forth in the annual salary schedule adopted. Here, the Hamilton Local Board of Education has attempted to terminate this continuing contract without notice, without hearing and without specification of cause or reason. R.C. 3319.081(C) controls termination of nonteaching contracts and provides that:

"The contracts as provided for in this section may be terminated by a majority vote of the board of education. Such contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance. * * * The action of the board of education terminating the contract of an employee or suspending or demoting him shall be served upon the employee by certified mail. Within ten days following the receipt of such notice by the employee, the employee may file an appeal, in writing, with the court of common pleas of the county in which such school board is situated. After hearing the appeal the common pleas court may affirm, disaffirm, or modify the action of the school board."

There is no other statutory provision for the termination of a continuing contract of a nonteaching employee of a local board of education.

There is no statutory provision for job abolishments or layoff of nonteaching personnel such as that for teachers set forth in R.C. 3319.17, which requires a board of education in reducing the number of teachers to "suspend contracts in accordance with the recommendation of the superintendent of schools who shall * * * give preference to teachers on continuing contracts and to teachers who have greater seniority. * * *" Hamilton Local Board of Education cites a decision of this court not involving school employees in *Durbin* v. *Schneider* (1964), 120 Ohio App. 366 [29 O.O.2d 209], wherein we stated at 367:

"* * * It is elementary in civil service law to distinguish between the removal of an employee from the position, and the abolishment of the position itself which results in the loss of employment for the person holding that position. * * *

"* * * [A]bolishment traditionally has been considered an executive func-

tion and not a personnel question. The power to appoint implies the power to abolish a position. * * *"

In *Durbin,* however, this court expressly found that mandamus was an appropriate remedy to determine whether tenure rights of the employees had been interfered with by the attempted abolishment.

More importantly, there is a very decided difference between abolishment of a position and the layoff or termination of an employee. Although a position as such may be abolished in the sense that certain job duties are no longer necessary to be performed, this does not automatically mean that a person having a continuing contract of employment is *ipso facto* terminated. In other words, pursuant to R.C. 3319.081, a nonteaching employee holding a continuing contract has a superior right of employment over a nonteaching employee on a limited contract which will expire. There is no evidence adduced as to whether there were nonteaching employees under limited contracts which would expire at the end of the school year and which could be nonrenewed pursuant to R.C. 3319.083 so as to accomplish the alleged economy efforts.

It is established by the affidavits that the duties performed by Ferdinand are essential to the operation of the cafeterias at the four schools in the district and that those duties are now being performed by other school personnel. Also, it has not been controverted that the school lunch program is not a general fund operation but, rather, is a self-sustaining operation and has operated at a profit under Ferdinand's supervision.

In addition, the board of education made no finding of economy or necessity for the abolishment of the job, either for the purpose of efficiency or economy. In short, the board made no finding of any need to abolish Ferdinand's position, much less terminate her contract.

Accordingly, construing the evidence most strongly in favor of respondent board of education, reasonable minds could only conclude that the board made no finding as to need to abolish the position, made no finding as to any reason for termination of Ferdinand's contract, acted arbitrarily and without prior notice or hearing to Ferdinand and did not follow any statutory procedure with respect to either job abolishment, economy measures or termination of nonteaching contracts.

Respondent board of education has confused the administrative power to determine and assign job duties and to create and abolish job titles (or even groupings of job duties) with layoff and termination of an employment contract. As we have noted, Ferdinand's continuing contract was not for a specific office or position but, rather, was for nonteaching employment with the board of education "subject to the assignment of the Superintendent of Schools and the Board of Education." Thus, the assignment of specific duties or a specific location for performance of those duties is within the discretion of the superintendent or the board so long as the duties fall within the abilities of the employee. Here, there is no dispute but that the duties which Ferdinand previously performed are necessary and are still being performed, but by different personnel. Accordingly, there is no lack of work for Ferdinand to perform under her continuing contract.

Respondent board relies upon *State, ex rel. Cutler,* v. *Pike Cty. Joint Area Vocational School Dist.* (1983), 6 Ohio St. 3d 138, as indicating both its power to abolish Ferdinand's position and terminate her continuing contract, as well as justification for its action, even in the absence of statutory authority. *Cutler,* however, is not similar to this case. In *Cutler,* the duties performed by the teachers, the teaching of electronics, were no longer needed in the school

district, and there were no other duties within the district which the teachers were qualified to perform, so that R.C. 3319.30 and 3319.36 precluded further employment of the teachers who were not certificated to teach any subject currently being taught in the district. Had the Hamilton Local Board of Education abolished its cafeteria system, so that there were no longer food services, we might have an analogous situation. However, so long as there are one or more cafeterias, someone must be in charge of supervising their operation, as to which there is no factual dispute. Moreover, in *Cutler,* the court noted that, although the board of education had no duty to continue employment of teachers who were not certified to teach any course being offered by the school district, the district might become liable to the teacher for compensation due under his continuing contract. Here, as we have noted, there is no suggestion that there are no nonteaching job duties which Ferdinand is qualified to perform under her continuing contract. Rather, the converse is true, and the rule of *Cutler* does not apply.

We agree that a board of education should not continue to employ a person for whom it has no work and who can perform no services or duties for the school district in return for the compensation paid. However, from the evidence construed most strongly in favor of the board, reasonable minds could only conclude that this is not the case but, instead, that there are ample job duties being performed by other personnel which were previously performed by Ferdinand, which can be performed by her in return for her compensation.

Returning to the express legal issue involved before us, namely, the applicability of R.C. 3319.081(C), we find that it applies to all terminations of nonteaching school employee contracts, whether limited or continuing. As noted, the section permits contracts to be ter-

minated only by the majority vote of the board. It then limits the reasons for termination, which are essentially for cause. The language of the section is absolute, stating "contracts may be terminated only" for the stated causes. However, as a matter of necessity, when the services of an employee are no longer necessary, the board may terminate a continuing contract so long as there are no limited contracts in existence. In other words, under the guise of economy, the board may not terminate a continuing contract at the end of a school year and reemploy an existing employee or employ a new employee under a limited contract to perform duties which could be performed by the employee whose continuing contract is terminated.

Necessarily, under unusual circumstances, a board of education may terminate a continuing contract of a nonteaching employee for reasons other than those set forth in R.C. 3319.081(C), which may include, although we do not determine the issue, elimination of a service being performed by the school district resulting in no longer needing services being performed by a person under a continuing contract, or actual lack of funds with which to pay the employee. However, as we have noted, where the action is taken with respect to school years, a local board of education must first nonrenew limited contracts before terminating the continuing contract of a nonteaching employee who can perform duties which the district will continue to have a need for and will continue to have performed. However, where a local board of education determines it to be necessary to terminate either a limited or continuing contract of a nonteaching employee either because of lack of work, because of reorganization or otherwise, or lack of funds, the board must make a specific finding to that effect in order to justify termination of the contract. Here, there has

been no determination by the board of education of any basis or reason for terminating Ferdinand's continuing contract other than that there is a desire to terminate her position even though her duties must continue to be performed by someone and are being performed by other school personnel.

Since R.C. 3319.081 vests a right of continued employment in a nonteaching employee having a continuing contract, it is necessary that a board of education make findings of specific reasons and need to terminate that continuing contract if it is to do so for reasons other than as specified in that section. A board of education is bound by a continuing contract under ordinary contract law, as indicated by the Supreme Court in *Cutler,* and may avoid the consequences of that contract to continue the nonteaching employee in employment with the school district when no statutory cause for termination exists, only where there is such a public exigency as to justify termination of the contract. Here, the board made no such finding and has presented no justification indicating the existence of such a public exigency.

Turning specifically to the assignments of error, the first assignment of error is not well-taken since no prejudicial error has been demonstrated. As to the legislative process in making legislative decisions, neither R.C. 3319.081 nor due process requires a hearing. In fact, R.C. 3319.081(C) does not specifically require a hearing prior to termination even for cause. We would agree that no hearing is required with respect to a decision of the board of education to redistribute job duties or establish new job titles or descriptions or to change job locations, so long as there is no interference with the rights of a nonteaching employee under a continuing contract. As we noted, the continuing contract of Ferdinand does not guarantee her a specific job or specific duties but, rather, continued employment at a specified salary on the salary schedule as a nonteaching employee to perform duties she is qualified to perform as assigned by the superintendent or the board.

What we hold here is that a nonteaching continuing contract may ordinarily be terminated only for the reasons set forth in R.C. 3319.081. In extraordinary circumstances, a nonteaching continuing contract may be terminated for what is in the nature of impossibility of performance, such as lack of work or lack of funds, but, when a contract is to be terminated by a board for such extraordinary reasons, the burden is upon the board to demonstrate the existence of the necessity of terminating the continuing contract. A resolution stating merely that a position is abolished and the continuing contract of a specific employee is terminated, followed by some after-the-fact statement by the superintendent that the purpose of the action was for economy, does not meet the burden of justification that the school board must sustain in order for it to terminate a contract of employment by which it is bound pursuant to law. Thus, we find no prejudicial error with respect to the trial court's ruling that a due process hearing was required under the circumstances and, accordingly, the first assignment of error is not well-taken.

Likewise, the second assignment of error is not well-taken. As we have indicated above, when the evidence is construed most strongly in favor of the board, reasonable minds could conclude only that the board had demonstrated no factual or legal basis for its action of terminating Ferdinand's contract of employment. Likewise, there appears to be no genuine issue of fact as to the salary of Ferdinand during the school year involved with respect to an increase. Apparently, according to what evidence there is, the policy existing up until the January 19, 1982 resolution

was that Ferdinand would benefit from negotiated raises for certificated personnel, which were negotiated and became effective as of January 1, 1982. Since there was evidence that this was part of the salary consideration as set for the school year in question, it could not be changed by the board arbitrarily and unilaterally in the middle of the year. Ferdinand was entitled to the increase for the current school year. R.C. 3319.082 specifically provides that the contract is set on a yearly basis as of the first day of July of each year, and there is no dispute but that the understanding at that time was that Ferdinand would receive the benefit of any increases. No issue has been raised as to the salary to become effective July 1, 1982, although it may not be less than that paid previously. Since the trial court did not err in granting summary judgment, the second assignment of error is not well-taken.

As to the third assignment of error, separate findings of law and fact are not necessary with respect to the granting of a motion for summary judgment, Civ. R. 52 expressly providing that no such findings are required. At the conclusion of its argument in support of this assignment of error, the board seeks further consideration of the issue of damages but does not specify any such issue that exists or would be appropriate to raise. There is no indication that the defense of failure to mitigate damages was raised by respondent board. Ordinarily, the amount of compensation to be paid for back pay will be reduced by compensation earned by the employee in the interim. There is no suggestion that that is the case. Relator Ferdinand timely brought this action even prior to the effective date of the purported termination of her continuing contract, and further delay has been caused by a stay of execution obtained by respondent board upon this appeal. Respondent board has demonstrated no prejudicial error with respect to the issue of damages, even assuming that the trial court did not fully explore or explain the issue. However, respondent board simply has demonstrated no genuine issue of fact with respect to damages. Instead, all the arguments are of a legal nature, although the board contends that it is unable to make an argument because of a lack of specificity of the trial court's finding. It is difficult to fault the trial court for not being more specific when respondent board has failed to set forth any specific factual basis for a finding contrary to that reached by the trial court. The third assignment of error is not well-taken.

For the foregoing reasons, all three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MOYER and GREY, JJ., concur.

GREY, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.